UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

BEAUTI RANI D.,

                Plaintiff,   1:21-cv-13020-NLH

v.                           **OPINION**

COMMISSIONER OF SOCIAL
SECURITY,[1]

---

**APPEARANCES:**

ADRIENNE FREYA JARVIS
800 NORTH KINGS HIGHWAY
SUITE 304
CHERRY HILL, NJ 08034

    *On behalf of Plaintiff*

ELIZABETH ANN CORRITORE
SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE GENERAL COUNSEL
300 SPRING GARDEN STREET
6TH FLOOR
PHILADELPHIA, PA 19123

    *On behalf of the Commissioner*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration.

405(g), regarding Plaintiff's application for Disability Insurance Benefits ("DIB")[2] under Title II of the Social Security Act.  42 U.S.C. § 423, et seq.  The issue before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, August 13, 2017.  For the reasons stated below, this Court will affirm that decision.

I.   BACKGROUND AND PROCEDURAL HISTORY

On July 26, 2018, Plaintiff filed an application for DIB, alleging that she became disabled on August 13, 2017.[3]  (R. at 29).  Plaintiff claims that she can no longer work as a data entry clerk, medical assistant, cashier/waiter, or cook helper because of her impairments of rheumatoid arthritis, thyroid problem, cornea problem in both eyes, knee pain in both knees, chronic pain, carpal tunnel in both hands, trouble sleeping, depression, anxiety, headaches, anemia, and nerve pain in chest

---

[2] DIB is a program under the Social Security Act to provide disability benefits when a claimant with a sufficient number of quarters of insured employment has suffered such a mental or physical impairment that the claimant cannot perform substantial gainful employment for at least twelve months.  42 U.S.C. § 423 et seq.

[3] On the date of her application Plaintiff was 38 years old, which is defined as a "younger person" (age 49 and under).  20 C.F.R. § 404.1563.

area.[4]  (Id. at 371).

Plaintiff's claim was denied initially and upon reconsideration.  (R. at 29).  Plaintiff requested a hearing before an ALJ, which was held on March 9, 2020, July 23, 2020, and September 15, 2020.  (Id.)  On September 25, 2020, the ALJ issued an unfavorable decision.  (Id.)  Plaintiff's Request for Review of Hearing Decision was denied by the Appeals Council on April 27, 2021, making the ALJ's decision final.  (Id. at 1).  Plaintiff brings this civil action for review of the Commissioner's decision.

## II.  DISCUSSION

### A.  Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for social security benefits.  Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence means

---

[4] The Court phrases Plaintiff's claimed impairments exactly as she phrased them in her disability report dated September 21, 2018.

3

more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S. 474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all the non-

4

medical evidence before him.  Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978).  Although an ALJ, as the factfinder, must consider and evaluate the medical evidence presented, Fargnoli, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004).  In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182.  However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards.  Sykes, 228 F.3d at 262; Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983);

5

Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981).

**B.   Standard for DIB**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C. § 1382c(a)(3)(A).  Under this definition, a plaintiff qualifies as disabled only if her physical or mental impairments are of such severity that she is not only unable to perform her past relevant work, but cannot, given her age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis.  See 20 C.F.R. § 404.1520.  This five-step process is summarized as follows:

1.   If the claimant currently is engaged in substantial gainful employment, she will be found "not disabled."

2.  If the claimant does not suffer from a "severe impairment," she will be found "not disabled."

3.  If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4.  If the claimant can still perform work she has done in the past ("past relevant work") despite the severe impairment, she will be found "not disabled."

5.  Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not she is capable of performing other work which exists in the national economy. If she is incapable, she will be found "disabled." If she is capable, she will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of her claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."

7

Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 13, 2017, Plaintiff's alleged onset date and that she had sufficient insurance coverage through March 31, 2019.  (R. at 32).  At step two, the ALJ found that Plaintiff's impairments of degenerative joint disease-bilateral knees, degenerative disc disease-cervical and lumbar, status post-knee surgery, rheumatoid arthritis, and carpal tunnel syndrome-bilateral were severe. (R. at 33).

The ALJ also determined that her impairments of obesity, insomnia, bilateral keratoconjunctivitis sicca (dry eyes), hypothyroidism, trigger fingers-bilateral, anemia, hyperlipidemia, gastroesophageal reflux disease (GERD), and status post-breast lumpectomy/breast mass excision, and breast abscess incision/drainage, were not severe.[5]  (Id. at 34).  At

---

[5] The Court notes that the list of impairments that the ALJ analyzed is lengthier and somewhat varied compared to the list of impairments that Plaintiff presented in her disability report.  The Court presumes that from her independent review of the record, the ALJ determined that her list of impairments was most accurate.  Indeed, that is consistent with an ALJ's duty to scrutinize the record for evidence of impairments. Plummer v. Apfel, 186 F.3d 422, 433 (3d Cir. 1999) ("In all cases, however, the ALJ has a duty to consider all evidence of impairments in the record.").  Regardless, Plaintiff does not identify as error

8

step three, the ALJ determined that Plaintiff's severe impairments or her severe impairments in combination with her other impairments did not equal the severity of one of the listed impairments.  (Id. at 33-38).

The ALJ next determined that Plaintiff had the residual functional capacity ("RFC") to perform work at the sedentary level,[6] with certain exertional restrictions.  (Id. at 40).  At steps four and five, the ALJ determined that based on Plaintiff's RFC, she would not be able to perform her past relevant work but would be able to perform sedentary occupations such as addresser and sorter.  (Id. at 50-52).

From the Court's review of Plaintiff's briefing, the Court discerns four areas of concern:  (1) whether the ALJ erred in finding that Plaintiff had no limitation on reaching other than a prohibition on overhead reaching; (2) whether the ALJ erred in finding that Plaintiff could frequently handle and finger objects; (3) whether the ALJ erred in finding that Plaintiff's chronic anemia was not a "severe" impairment; and (4) whether the ALJ erred in the decision that Plaintiff could perform

---

the ALJ's longer list of impairments.

[6] 20 C.F.R. § 404.1567 ("Physical exertion requirements. To determine the physical exertion requirements of work in the national economy, we classify jobs as sedentary, light, medium, heavy, and very heavy.").

9

significant numbers of jobs at step 5. (ECF 12 at 1).

### i. Plaintiff's Limitations in Reaching and Fingering and Handling

The Court considers Plaintiff's first two assignments of error together because they stem from Plaintiff's contention that the ALJ improperly discounted the medical opinions of three of Plaintiff's doctors, Drs. Oxenberg, Harhay, and Cilursu. (See ECF 12 at 4-5). The Court rejects Plaintiff's first two assignments of error. Plaintiff first argues that the ALJ improperly rejected the three opinions on the basis that they were not supported by objective findings and, second, that the ALJ improperly required that each of the doctors indicate how long they had treated Plaintiff. (ECF 12 at 8-14). With respect to Dr. Cilursu's opinion in particular, Plaintiff argues that the ALJ ignored the fact that Dr. Cilursu's opinion on reaching referenced inflammation which is objective medical evidence regarding Plaintiff's reaching abilities. (Id. at 8).

Plaintiff mischaracterizes the ALJ's opinion. The ALJ stated that she was rejecting those medical opinions because they "failed to offer an adequate written explanation with citation to objective findings[.]" (R. at 47-49). The ALJ was free to discount those opinions on that basis especially given the lengthy analysis that she conducted for each of the doctors' medical opinions. Burnett, 220 F.3d at 122. The Court has

10

reviewed the record and finds no reason to substitute its judgment for that of the ALJ.  See Williams, 970 F.2d at 1182.  Thus, to the extent that the doctors were not required to explicitly state how long they had been seeing Plaintiff and that the ALJ stated that they should have, the ALJ separately discounted the opinions on the permissible basis that they were not adequately explained.  W.P. v. Comm'r of Soc. Sec., No. CV 21-2940 (RBK), 2022 WL 2341561, at *1 (D.N.J. June 29, 2022) (noting that medical opinions that are accompanied by supporting explanations are more persuasive) (citing 20 C.F.R. § 404.1520c(c)(1)).  Thus, the Court finds no error with the ALJ's conclusions regarding Plaintiff's ability to reach and to finger and handle.

      **ii.  Designation of Plaintiff's Anemia as a Non Severe Impairment**

Plaintiff's next contention is that the ALJ erred in finding that Plaintiff's anemia was not a severe impairment.  (ECF 12 at 13).  She argues that the ALJ's conclusion that her anemia was not severe because it was controlled by infusions, which the ALJ considered a "conservative" treatment, was not supported by substantial evidence because the ALJ did not identify a more aggressive alternative treatment.  (Id. at 12-14).  Notably, Plaintiff does not cite any authority that requires the ALJ to identify more aggressive alternative

11

treatment methods after opining that a course of treatment is conservative. Plaintiff appears to be trying to shift the burden at step 2, which was on her, to the ALJ. Kocovska v. Comm'r Of Soc. Sec., No. CIV.A.07-5365 PGS, 2008 WL 4513284, at *6 (D.N.J. Sept. 26, 2008) ("At Step 2, the Plaintiff has the burden of proof, and there is nothing in the record as a whole which remotely suggests severe impairment during the Period of Disability.").

In addition, and critically, the infusions that Plaintiff cites as treatment for her anemia and as evidence that her condition was severe occurred after March 31, 2019, Plaintiff's date of last insured. (R. at 35). Plaintiff had to establish the severity of the impairment prior to the date last insured. John M. v. Kijakazi, No. 1:20-CV-15012, 2022 WL 489460, at *8 (D.N.J. Feb. 17, 2022) (finding no error with the ALJ's determination that an impairment was not severe where the plaintiff did not establish great limitations associated with the condition prior to the date last insured). Notwithstanding that requirement, the ALJ dedicated a detailed paragraph to discussing Plaintiff's anemia and that multiple treatment notes described her as "asymptomatic" and that Plaintiff specifically denied abnormal vaginal bleeding multiple times. (R. at 35). Plaintiff also mischaracterizes the ALJ's opinion in that the ALJ referred to Plaintiff's "treatment via medication,

12

prescription and over the counter" as conservative, not the infusions. (Id.)  Finally, the ALJ stated multiple times that she was incorporating her severity determinations into the RFC. (Id. at 38-46).  Thus, to the extent that it was error to determine that Plaintiff's anemia was not severe, such error was harmless.  Friday v. Comm'r of Soc. Sec., No. 1:20-CV-04504-NLH, 2021 WL 3879081, at *4 (D.N.J. Aug. 31, 2021) ("Thus, typically when an ALJ finds that the claimant has at least one severe impairment at step two and continues onto the subsequent steps, omission of another impairment at step two is harmless error.  The error at step two is only harmless, however, where the ALJ has considered the missing medically determinable impairment in the RFC determination and it would not otherwise affect the outcome of the case.").  Thus, the Court finds no error with the ALJ's severity determination.

### iii. Determination that Plaintiff Could Perform Jobs that Existed in Significant Numbers at Step 5.

Plaintiff argues that the ALJ erred in determining at step 5 that Plaintiff could perform the jobs of addresser and sorter. (ECF 12 at 16).  Plaintiff contends that it was error to find that she could work as a sorter where that position was classified as semiskilled by the Dictionary of Occupation Titles (the "DOT") but the ALJ stated that she did not need to make a finding on the transferability of Plaintiff's skills.  (Id. at

13

17). Separately, Plaintiff argues that the job of addresser is obsolete and thus not an appropriate occupation for the ALJ to rely upon at Step 5. (Id. at 19). Plaintiff also argues that the vocational expert (the "VE") did not provide appropriate job incidence data about the two occupations and that the ALJ violated Plaintiff's due process rights by not allowing her counsel to question the VE regarding regional job incidence data for the two jobs. (Id.)

The Court will not remand on any of these bases. First, the Court notes that there appears to be some tension between the caselaw and the regulations regarding the findings that an ALJ must make regarding transferability. The ALJ cited SSR 82-41 and 20 C.F.R. § Pt. 404, Subpt. P, App. 2 for the proposition that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills[.]" (R. at 51). That is an accurate reading of the Medical Vocational Guidelines. 20 C.F.R. § Pt. 404, Subpt. P, App. 2 (stating that younger individuals with at least a high school education and who are limited to sedentary work should be found not disabled regardless of whether they have transferrable

14

skills).⁷  That said, there is some case law suggesting that before an ALJ determines that a plaintiff can do skilled or semiskilled work, they must make a finding on transferability. See Destefano v. Astrue, No. CIV.A. 07-3750, 2009 WL 113744, at *8 (E.D. Pa. Jan. 14, 2009) ("In determining whether a claimant can perform other work, the Commissioner must consider whether he or she has transferable skills from his/her past work."); Emery v. Astrue, No. 07-2482, 2008 WL 5352923, at *3 (E.D. Pa. July 21, 2008), report and recommendation adopted, No. CIV.A. 07-2482, 2008 WL 5272454 (E.D. Pa. Dec. 18, 2008) ("The Commissioner has conceded that the ALJ erred in finding that Emery had no transferable skills, and then identifying semiskilled jobs for her.").

Even if it was error for the ALJ not to enumerate

---

⁷ SSR 82-41 reads, "When the table rules in Appendix 2 are applicable to a case, transferability will be decisive in the conclusion of 'disabled' or 'not disabled' in only a relatively few instances because, even if it is determined that there are no transferable skills, a finding of 'not disabled' may be based on the ability to do unskilled work." Reading between the lines, it appears that the idea that transferability is irrelevant comes from the assumption that a plaintiff could at least do unskilled work. The regulations are silent though, as to whether that means at step 5 that an ALJ who does not make a finding on transferability may only look at unskilled occupations to determine if there are alternative jobs for a given plaintiff. Here the sorter occupation is semiskilled and the addresser occupation is unskilled. (R. at 52). To the extent that a transferable skills analysis is not required if one of the available positions, as here, is unskilled, there is no error.

Plaintiff's transferrable skills that would allow her to perform the sorter job, remand is inappropriate here because "the evidence of record clearly supports the conclusion that [Plaintiff] does have the transferable skills which permit her to do semiskilled work." Emery, 2008 WL 5352923 at *3.  Indeed, the ALJ's questions to the VE that led to the identification of the sorter job incorporated Plaintiff's background, education, and impairments.  (See R. at 110-11).  The Court will not remand where it would be a futile exercise.  Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("[A] remand is not required here because it would not affect the outcome of the case.").

Separately, Plaintiff argues that the ALJ erred in citing the addresser position as an alternative occupation because it is obsolete.  (ECF 12 at 19).  Whereas as a practical matter, the addresser job may be becoming less and less common in the modern world, it is still listed as an occupation in the DOT and thus its consideration is presumptively justified.  See Norabeth D. v. Kijakazi, No. 1:21-CV-12874, 2022 WL 2952913, at *9 (D.N.J. July 26, 2022) ("'[T]he DOT remains an appropriate source of occupational data. Under 20 C.F.R. § 404.1566(d)(1), the Social Security Administration may take administrative notice of job information from the DOT.'") (quoting Devault v. Astrue, No. 13-0155, 2014 WL 3565972, at *6 (W.D. Pa. July 18, 2014)).  Though this Court shares Plaintiff's concern about

16

whether the addresser position in the DOT is up to date, it is not empowered to rewrite the DOT. Jean-Pierre v. Comm'r of Soc. Sec., No. 1:16-CV-05691-NLH, 2017 WL 4316880, at *9 (D.N.J. Sept. 28, 2017) ("It is not for this Court to reform the methodology that SSA VEs use to determine available and appropriate jobs in the national economy that match a claimant's RFC.").

Relatedly, Plaintiff argues that the ALJ's determination that there were 60,000 addresser jobs and 2,900,000 sorter jobs nationally was in error. (ECF 12 at 18-19). Plaintiff bases this argument on the fact that the number of jobs identified by the VE was not based on the DOT. (Id.) Plaintiff misses the fact that the ALJ may take notice of various sources on job statistics and may also rely on the testimony of a VE. 20 C.F.R. § 404.1566(d), (e). The ALJ explicitly relied on the VE's expertise in making a finding on job incidence rates. (R. at 52 ("[T]he undersigned acknowledges that the number of jobs cited by the vocational expert is an estimate that he has based on reliable information from various sources, some of which the undersigned takes administrative notice, such as the Bureau of Labor Statistics[.]")). The VE testified that he took the numbers on job incidence from the Bureau of Labor Statistics. (R. at 129-30). That was a permissible source for the VE to consult and the Court will not second guess that figure without

17

more.  20 C.F.R. § 404.1566(d) (listing a publication by the Bureau of Labor Statistics as an example of an acceptable source of job incidence data); Poole v. Saul, 462 F. Supp. 3d 137, 163 (D. Conn. 2020) ("An ALJ does not err when he relies on a vocational expert's testimony that is based on personal experience, labor market surveys, and published statistical sources in determining the number of jobs available. Further, it is sufficient that the vocational expert identified the sources he generally consulted to determine job incidence numbers.") (internal citations and quotation marks omitted).

Finally, Plaintiff argues that the ALJ erred by not making findings on the regional job incidence of the sorter and addresser jobs and by not allowing Plaintiff's counsel to question the VE about regional statistics.  (ECF 12 at 19-20).  Plaintiff misstates the standard.  If there is sufficient work in the national economy, not just regional, that Plaintiff can do, the ALJ will have met her burden at step five.  See 20 C.F.R. § 416.966(b)[8]  Although not binding precedent, consistent

---

[8] 20 C.F.R. § 416.966(b)("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications. Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy. We will not deny you disability benefits on the basis of the existence of these kinds of jobs. If work that you can do does not exist in the national economy, we will determine that you

18

with the cited regulation, a panel of the Third Circuit has affirmed a finding that there was no disability where there were thousands of jobs available in the national economy after a step 5 analysis. Phillips v. Barnhart, 91 F. App'x 775, 778 (3d Cir. 2004). Here, the ALJ found millions of sorter jobs and tens of thousands of addresser jobs in the national economy. (R. at 52). For the reasons stated above, the Court will not second guess those figures.

Separately, to the extent that Plaintiff argues that her due process rights were violated because her counsel was not allowed to question the VE regarding regional statistics, that argument fails. To prevail on a due process claim, Plaintiff must show prejudice. Herring v. Colvin, 181 F. Supp. 3d 258, 273 (M.D. Pa. 2014) ("[T]he Third Circuit has repeatedly and clearly enunciated a prejudice requirement in the context of an ALJ's requirement to develop the record.") (citing U.S. ex rel. Doggett v. Yeager, 472 F.2d 229, 238 (3d Cir.1973)); Pena v. Comm'r of Soc. Sec., 489 F. App'x 401, 403 (11th Cir. 2012) ("In a social security case, the ALJ has a basic obligation to develop a full and fair record. But we have indicated that there must be a showing of prejudice before we will find that

---

are disabled. However, if work that you can do does exist in the national economy, we will determine that you are not disabled.").

the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.") (internal citations and quotation marks omitted). Plaintiff argues that she was prejudiced because she was entitled to a determination of whether the jobs existed regionally. (ECF 12 at 20-22). As stated above, the yardstick for job incidence is the national economy. Virginia R. v. Comm'r of Soc. Sec., No. CV 20-20687 (KM), 2022 WL 671362, at *4 (D.N.J. Mar. 7, 2022) (considering SSR 96-9p in the context of job prevalence in the national economy). The ALJ conducted lengthy hearings over the course of three days. (R. at 29). The Court sees nothing in the record that suggests that Plaintiff's due process rights were violated and that she was prejudiced by any such violation. The Court will not remand on that basis.

### III. Conclusion

For the reasons expressed above, the decision of the ALJ was supported by substantial evidence and must be affirmed.

An accompanying Order will be issued.

Date: September 28, 2022          s/ Noel L. Hillman
At Camden, New Jersey             NOEL.L. HILLMAN, U.S.D.J.